UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | | |
|---|---|---|
| O'NEIL J. DARDEN, JR. | : | CIVIL ACTION NO. 6:22-cv-0404 LEAD<br>6:22-cv-1398 MEMBER |
| VERSUS | : | JUDGE ROBERT R. SUMMERHAYS |
| ROBERT C. VINES, ET AL. | : | MAGISTRATE JUDGE KAY |

**REPORT AND RECOMMENDATION**

Before the court is a Motion to Dismiss filed by Robert Vines, in his individual and alleged official capacities, and M. Bofill Duhé, in his individual and official capacities (collectively, "District Attorney Defendants"). Doc. 24. The instant case was consolidated with another matter of the same name [6:22-cv-01398 (member)] in which a nearly identical Motion to Dismiss was filed by the District Attorney Defendants. Doc. 22 (member). The substance of this Report and Recommendation applies to both motions to dismiss. The motions are opposed by plaintiff O'Neil J. Darden, Jr. Doc. 32 (lead).[1] Both motions have been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636.

For the reasons stated, **IT IS RECOMMENDED** that the motions be **GRANTED IN PART.**

**I.**
**BACKGROUND**

This civil rights action arises out of alleged malicious prosecution and abuse of process that resulted in plaintiff being criminally charged with and prosecuted for felony theft, computer

---

[1] All subsequent instances of "doc." reference documents from the lead case.

-1-

fraud, and obstruction of justice. Doc. 4, ¶¶ 43–44. Plaintiff, a former employee of Cypress Bayou Casino, was elected Tribal Council Chairman of the Chitimacha Tribe of Louisiana in June 2015. *Id.* at ¶ 29. Defendant Duhé is the District Attorney for the 16th Judicial District, State of Louisiana. *Id.* at ¶ 16. Defendant Vines is the assistant District Attorney for the 16th Judicial District, State of Louisiana, and the Tribal Prosecutor for the Chitimacha Tribe of Louisiana. *Id.* at ¶ 9.

The laws of the Chitimacha Tribe of Louisiana allegedly prohibit council members from working in the Casino or receiving any payments from the Casino. *Id.* at ¶ 36. After his election as Chairman, plaintiff allegedly received a bonus payment from the Casino for his former employment as a director, and the Tribal Council allegedly did not oppose the payment. *Id.* at ¶¶ 38–41. After the Tribal Gaming Commission received a complaint about "misappropriation of bonus monies," plaintiff and two others were criminally charged with felony theft, computer fraud, and obstruction of justice. *Id.* at ¶ 43. The Tribal Council Defendants[2] pursued the charges with the Office of the District Attorney for the 16th Judicial District of Louisiana in St. Mary Parish. *Id.* at ¶ 44. Defendant Robert Vines prosecuted the matter in his capacity as assistant district attorney. *Id.* Plaintiff alleges that defendants used the prosecution to oust him as Chairman of the Tribal Council and to pursue their own personal gains. *Id.* at ¶¶ 49–50.

This lawsuit was originally one of three filed by plaintiff, with suits filed in this court, state court (now removed to this court), and Chitimacha Tribal Court. Doc. 18, att. 4, p. 8. Defendants removed the state court action to this court, and the matter, also captioned *Darden v. Vines*, was assigned case number 6:22-cv-01398. As to the District Attorney Defendants, plaintiff makes claims of malicious prosecution, abuse of process, and a § 1983 conspiracy. Doc. 4, ¶ 2. The

---

[2] The Tribal Council Defendants are defendants April Wyatt, Melissa Darden, John Paul Darden, Jacob Darden, Toby Darden, and Jacqueline Junca. Doc. 4, ¶¶ 10–15.

District Attorney Defendants then filed the instant motions to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Doc. 24. Specifically, they claim protection from suit under tribal sovereign immunity, Eleventh Amendment immunity, absolute prosecutorial immunity, and qualified immunity. *Id.* After the District Attorney Defendants filed motions to dismiss in both suits before this court, but before opposition was due, the two suits were consolidated. Doc. 30. The opposition filed in the lead case addresses the motions in both cases. Doc. 32, p. 8, n.1.

## II.
### LAW AND ANALYSIS

In their Motions to Dismiss, the District Attorney Defendants seek dismissal under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Doc. 24. Tribal sovereign immunity offers complete immunity from suit and defeats a court's jurisdiction. *See Michigan v. Bay Mills Indian Community*, 134 S.Ct. 2024, 2030–31 (2014). Eleventh Amendment immunity is also jurisdictional in nature. *Watson v. Texas*, 261 F.3d 436, 440 (5th Cir. 2001). The affirmative defenses of absolute immunity and qualified immunity, however, do not affect our subject matter jurisdiction, but rather implicate whether plaintiff states a claim on which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). *Geraci v. City of Austin*, No. 1:19-CV-00340, 2020 WL 1644004, at *2 (W.D. Tex. Apr. 2, 2020) (referencing *Esteves v. Brock*, 106 F.3d 675, 676–77 (5th Cir. 1997)). Thus, we consider the District Attorney Defendants' claims of tribal and Eleventh Amendment immunity under Rule 12(b)(1) and their assertion of absolute and qualified immunity (as well as their other claims) under Rule 12(b)(6).

A. *Claims Under Rule 12(b)(1)*

Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case. Fed. R. Civ. P. 12(b)(1). For a Rule 12(b)(1) motion to dismiss, the "party asserting jurisdiction bears the burden of proof

and must establish, by a preponderance of the evidence, that the court has jurisdiction." *Mitchell v. Bailey*, 982 F.3d 937, 940 (5th Cir. 2020). When filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. *Hitt v. City of Pasadena,* 561 F.2d 606, 608 (5th Cir. 1977) (per curiam).

1. *Tribal Immunity*

The District Attorney Defendants assert that tribal sovereign immunity shields them from plaintiff's claims against them as the employee/agent of the Chitimacha Tribe. Doc. 24, att. 1, p. 15. Plaintiff disagrees. Doc. 32, pp. 12–13. Tribal sovereign immunity shields: (1) the tribe; (2) entities of the tribe that function as an "arm of the tribe;" and (3) "all tribal employees acting within their representative capacity and within the scope of their official authority." *Spivey v. Chitimacha Tribe of La.*, No. 6:21-2257, 2022 WL 558026, at *4 (W.D. La. Feb. 2, 2022). Plaintiff's claims against the District Attorney Defendants center around their alleged investigation into and prosecution of plaintiff. *See* doc. 4, ¶¶ 51–53. Plaintiff specifically alleges that defendants Vines and Duhé acted in their capacities as assistant district attorney and district attorney, respectively. *Id.* at ¶¶ 44–45, 157.

Furthermore, even if the District Attorney Defendants acted as the Tribe's employees or agents, the United State Supreme Court's opinion in *Lewis v. Clarke* precludes the application of tribal immunity here. 137 S.Ct. 1285 (2017). In *Lewis*, the Court found that a suit against a tribal employee acting in the scope of his employment did not invoke sovereign immunity because the suit was against the employee for his personal actions and would not require action by the sovereign or disturb the sovereign's property. *Id.* at 1291. Similarly, the claims against the District Attorney Defendants are for their actions during the investigation and prosecution of plaintiff, and

a judgment against these defendants neither requires action by the Chitimacha Tribe nor disturbs the Tribe's property. Thus, tribal immunity is inapplicable here.

2. *Eleventh Amendment Immunity*

The District Attorney Defendants also claim that plaintiff's official capacity claims against them are barred by the Eleventh Amendment. Doc. 24, att. 1, pp. 16–17. In support of this claim, they rely on the Fifth Circuit's opinion in *Esteves v. Brock*, in which the court found that a Texas prosecutor acting in her official capacity was a state actor protected by the Eleventh Amendment from § 1983 damages. *Id.* (referencing *Esteves*, 106 F.3d 674 (5th Cir. 1997)). Plaintiff disagrees, claiming that under *Burge v. Parish of St. Tammany*, 187 F.3d 452 (5th Cir. 1999), a Louisiana district attorney sued in his official capacity is a local official not entitled to Eleventh Amendment immunity. Doc. 32, pp. 13–14. In *Spikes v. Phelps*, the Fifth Circuit (relying on *Burge*) declined to apply *Esteves* to a Louisiana district attorney and asserted that a Louisiana "parish district attorney is not entitled to Eleventh Amendment immunity." 131 F. App'x 47, 49 (5th Cir. 2005) (citing *Hudson v. City of New Orleans*, 174 F.3d 677, 681 n.1 (5th Cir. 1999) and *Burge*, 187 F.3d at 466–67). Thus, the District Attorney Defendants do not enjoy Eleventh Amendment immunity from suit.

Based on the foregoing, we recommend that the Motions to Dismiss for Lack of Subject Matter Jurisdiction [doc. 24; 6:22-cv-01398, doc. 22] be DENIED.

**B. *Claims Under Rule 12(b)(6)***

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is appropriate when a complaint fails to state a legally cognizable claim. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). In other words, a Rule 12(b)(6) motion "'admits the facts alleged in the complaint, but challenges plaintiff's rights to relief based upon those facts.'" *Id.* at

161–62. When deciding a Rule 12(b)(6) motion, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks and citation omitted). But the court does not "'presume true a number of categories of statements, including legal conclusions; mere labels; threadbare recitals of the elements of a cause of action; conclusory statements; and naked assertions devoid of further factual enhancement.'" *Harmon v. City of Arlington, Texas*, 16 F.4th 1159, 1162–63 (5th Cir. 2021) (quoting *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964–65 (2007) (internal citations, quotation marks, and brackets omitted). Moreover, "the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d at 205 (quoting *Twombly*, 127 S.Ct. at 1974). In considering a Rule 12(b)(6) motion, a court must limit itself to the contents of the complaint, including documents attached to or incorporated by the complaint, and matters of which judicial notice may be taken, including matters of public record. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

    1. *Constitutional Malicious Prosecution Claims*

Constitutional malicious prosecution claims are rooted in the Fourth Amendment to the United States Constitution. *Thompson v. Clark*, 142 S.Ct. 1332, 1338 (2022). Therefore, the presence of an unlawful Fourth Amendment seizure is a threshold element of such claims.

*Armstrong v. Ashley*, 60 F.4th 262, 279 (5th Cir. 2023).  Plaintiffs in the Fifth Circuit must prove six additional elements to succeed on a constitutional malicious prosecution claim under 42 U.S.C. § 1983: "(1) the commencement or continuance of an original criminal proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) malice; and (6) damages." *Id.* (quoting *Gordy v. Burns*, 294 F.3d 722, 727 (5th Cir. 2002)).

There is no dispute that plaintiff was the subject of criminal proceedings, which resulted in his acquittal. *See e.g.*, doc. 4, ¶ 186; doc. 24, att. 1, p. 19.  Plaintiff attempts to show that defendants Vines and Duhé caused his prosecution and that probable cause was lacking by alleging that they engaged in a frivolous investigation, brought frivolous criminal charges against him, fabricated evidence, and used perjured testimony at his trial. *E.g.*, doc. 4, ¶¶ 198, 202, 219.  The District Attorney Defendants assert that these allegations are conclusory and insufficient and that they are entitled to absolute prosecutorial immunity against plaintiff's malicious prosecution claim. Doc. 24, att. 1, pp. 17–25.

### a. Absolute Prosecutorial Immunity

Defendants claim absolute prosecutorial immunity shields them from plaintiff's federal-law claims. Doc. 24, att. 1, pp. 17–26.  Plaintiff disagrees and argues that under the "functional approach," Vines and Duhé's activities were investigative. Doc. 32, pp. 14–22.  Absolute immunity protects individuals from claims for damages; it does not bar official-capacity claims or claims for injunctive relief. *Singleton v. Cannizzaro*, 956 F.3d 773, 778 n.3 (5th Cir. 2020) (citing *Burge*, 187 F.3d at 466).

Under the "functional approach" to absolute prosecutorial immunity, the court "'focuses on the function the prosecutor was performing.'" *Wearry v. Foster*, 33 F.4th 260, 268 (5th Cir. 2022) (quoting *Singleton*, 956 F.3d at 783). A prosecutor has absolute immunity for his advocatory functions but not for investigatory functions. *Id.* at 266. We must evaluate the functions of the activities at issue rather than relying on the bare labels "advocatory" or "investigatory. *Id.* A prosecutor's decision to criminally charge a defendant is protected by absolute immunity. *Id.* at 265–66. It is "'the defendant who pleads the affirmative defense of absolute prosecutorial immunity who bears the burden of proving that the conduct at issue served a prosecutorial function.'" *Id.* at 269 (internal brackets omitted).

The District Attorney Defendants argue that plaintiff's allegations are vague, conclusory, and insufficient to allege a cause of action or constitutional violation. Doc. 24, att. 1, p. 22. They also assert that plaintiff's allegations that they conducted an investigation are insufficient; for instance, plaintiff claimed defendant Vines coerced witnesses to give false testimony but did not specify what testimony was false or which witnesses were coerced. *Id.* at p. 25.

Plaintiff attempts to circumvent absolute prosecutorial immunity by alleging that the District Attorney Defendants engaged in an investigation. The alleged investigation consists of re-interviewing witnesses who spoke to the Louisiana State Police ("LSP") and obtaining affidavits and written statements from industry experts. "There is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand." *Wearry*, 33 F.4th at 267 (quoting *Buckley v. Fitzsimmons*, 113 S.Ct. 2606, 2616 (1993)) (internal quotation marks omitted).

Defendants Vines and Duhé contend that unlike *Buckley*—where prosecutors shopped for experts to develop evidence to establish probable cause to arrest the suspect—here, plaintiff's factual allegation that the LSP had arrested him and referred the matter to the United States Attorney prior to the defendants' alleged investigation shows that probable cause existed when defendants allegedly re-interviewed witnesses and sought affidavits and statements from industry experts. Doc. 24, att. 1, pp. 23–24. According to the District Attorney Defendants, this information means that the alleged investigation was actually an advocatory function. *Id.* Nothing in the facts plaintiff alleges indicate that Vines or Duhé went beyond the advocate's role in preparing to initiate prosecution. The alleged "investigation" was part of the "'prosecutor's role in screening cases for prosecution and in safeguarding the fairness of the criminal judicial process.'" *See Loupe v. O'Bannon*, 824 F.3d 534, 539 (5th Cir. 2016) (quoting *Burns v. Reed*, 111 S.Ct. 1934, 1936 (1991) (finding that giving legal advice did not fall within this role)).

Plaintiff also alleges that the District Attorney Defendants fabricated evidence and used perjured testimony at trial. *E.g.*, doc. 4, ¶¶ 89, 221–24. Fabricating evidence "is unprotected by absolute immunity.'" *Wearry*, 33 F.4th at 267 (quoting *Milstein v. Cooley*, 257 F.3d 1004, 1011 (9th Cir. 2001)). Plaintiff does not give any support for his claims that the District Attorney Defendants fabricated evidence and used perjured testimony at trial. He claims that no witness, document, or fact implicated him in any criminal conduct [doc. 4, ¶ 121] but provides no support for this conclusion. Furthermore, plaintiff acknowledges that a bonus payment from the Casino was transferred to his account despite Tribal law's prohibition against Tribal Council members receiving payments from the Casino. *Id.* at ¶¶ 40, 36.

Plaintiff's other support for his claim that defendants fabricated evidence comes from his unsupported assertions that industry expert affidavits and statements were exculpatory and that

witnesses gave different testimony to defendant Vines than they did to the LSP. *Id.* at ¶¶ 78–79, 71–72, 88. We need not accept as true "legal conclusions; mere labels; threadbare recitals of the elements of a cause of action; conclusory statements; and naked assertions devoid of further factual enhancement." *Harmon v. City of Arlington, Texas*, 16 F.4th 1159, 1162–63 (5th Cir. 2021) (quoting *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc)). Thus, plaintiff's claims that the District Attorney Defendants fabricated evidence do not bar absolute prosecutorial immunity. Accordingly, the District Attorney Defendants are entitled to absolute immunity from plaintiff's individual-capacity constitutional claims, and those claims should be DISMISSED.

### b. Qualified Immunity

Qualified immunity extends to government officials performing discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 102 S.Ct. 2727, 2738 (1982). Like absolute immunity, qualified immunity protects individuals from claims for damages but does not bar official capacity claims or claims for injunctive relief. *Singleton v. Cannizzaro*, 956 F.3d 773, 778 n.3 (5th Cir. 2020) (citing *Burge*, 187 F.3d at 466). Because defendants are entitled to absolute prosecutorial immunity for all the individual-capacity constitutional claims, the only remaining claims are official-capacity claims and state-law claims, neither of which fall within the scope of federal qualified immunity. We thus forego this analysis and move on to the *Monell* claims.

### c. Monell Claims

Official capacity claims against municipal officials fall under *Monell v. Department of Social Services*, 98 S.Ct. 2018 (1978). Under *Monell*, plaintiff must show that "'action pursuant to official municipal policy of some nature caused a constitutional tort.'" *Kimble v. Jefferson*

*Parish Sheriff's Office*, No. 22-30078, 2023 WL 1793876, at *3 (5th Cir. Feb. 7, 2023) (quoting *Monell*, 98 S.Ct. at 2036). To find the District Attorney Defendants liable under *Monell*, plaintiff must allege that they are policymakers and identify an official policy "that was the moving force behind the alleged constitutional rights violation." *Armstrong*, 60 F.4th at 276. An official policy is (1) a policy statement, ordinance, and the like "that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority;" or (2) a persistent, widespread practice of city officials or employees, which is so common and well settled that it constitutes a custom that fairly represents municipal policy. *Id.* (citing *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc)).

Plaintiff does not allege that an officially promulgated policy instructed defendants' actions. Thus, he relied on alleging a custom or practice that fairly represents municipal policy. Plaintiff alleges that defendants Vines and Duhé acted as policymakers in their "actions investigative, administrative and extra-judicial." Doc. 4, ¶¶ 156–57. He also alleges that all their acts, including failing to adequately train prosecutors [*id.* at ¶ 242], were "unjustifiable policy acts and decisions." *Id.* at ¶ 161. Plaintiff concludes that "by their conduct and failure to take action to prevent the continued unlawful prosecution of Plaintiff by Robert C. Vines . . . [the District Attorney Defendants] have established a policy of unlawfully investigating, initiating and continuing the unlawful malicious prosecution of Plaintiff in violation of his well-established constitutional rights, as alleged." *Id.* at ¶ 160. For similar statements, *see id.* at ¶¶ 164, 166, 168–69. The Fifth Circuit has found that a Louisiana district attorney "is the independent and final official policymaker for all of the administrative and prosecutorial functions of his office." *Burge*, 187 F.3d at 469. The Fifth Circuit has also previously found that an assistant district attorney is a policymaker under Louisiana law. *Aucoin v. Haney*, 306 F.3d 268, 276 (5th Cir. 2002).

Plaintiff claims that he need not affirmatively allege in the Complaint the official policy or custom that caused his injury. Doc. 32, p. 24. He asserts that *Monell* liability can arise from a single decision or act of a final policymaker. *Id.* at p. 25. Fifth Circuit precedent supports the latter claim. *See Davidson v. City of Stafford, Texas*, 848 F.3d 384, 395 (5th Cir. 2017) ("In 'rare circumstances,' a single unconstitutional action may be sufficient to impose municipal liability 'if undertaken by the municipal official or entity possessing "final policymaking authority" for the action in question.'"). The Fifth Circuit has also found that a party who pleads custom or practice "in a conclusory fashion without meaningful factual content" does not adequately allege an official policy. *Armstrong*, 60 F.4th at 276–77. All of plaintiff's assertions of an official policy and practice in the Complaint were conclusory labels unsupported by factual assertions. Thus, plaintiff fails to state an official-capacity claim to relief that is plausible on its face. Accordingly, we recommend that plaintiff's official-capacity claims against defendants Vines and Duhé be DISMISSED.

*2. Conspiracy Claims*

The District Attorney Defendants assume plaintiff's conspiracy claims arise under 42 U.S.C. § 1985 [doc. 24, att. 1, p. 27]; however, the Complaint lists the conspiracy allegations under Counts IV and V, which are § 1983 claims. Doc. 4, ¶¶ 232, 237. Additionally, in his opposition to the instant motions, plaintiff's sole citation to caselaw in his argument supporting his conspiracy claims refers to a case handling a § 1983 conspiracy claim. Doc. 32, p. 23. Thus, we review plaintiff's conspiracy claims under the standards for a conspiracy asserted under § 1983.

"In order to prevail on a section 1983 conspiracy claim, a plaintiff must establish (1) the existence of a conspiracy involving state action and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy." *Armstrong*, 60 F.4th at 280 (internal quotation

marks and citation omitted). If a plaintiff does not plausibly plead an underlying constitutional deprivation by the defendants, there can be no § 1983 conspiracy. *Id.* (referencing *Shaw v. Villanueva*, 918 F.3d 414, 419 (5th Cir. 2019)); *see also Whitley v. Hanna*, 726 F.3d 631, 649 (5th Cir. 2013) (quoting *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995)) ("[A] conspiracy claim is not actionable without an actual violation of section 1983.").

Because we have found that defendants Vines and Duhé are entitled to absolute immunity for the individual-capacity constitutional claims against them and that plaintiff failed to state a *Monell* claim that is plausible on its face, plaintiff has not plausibly pled an underlying constitutional deprivation by defendants. Therefore, plaintiff's conspiracy claims are not actionable and should be DISMISSED. *See Armstrong*, 60 F.4th at 280.

### 3. State Law Claims

#### a. Malicious Prosecution

The essential elements of a malicious prosecution claim under Louisiana law are "(1) the commencement or continuance of an original criminal or civil judicial proceeding; (2) its legal causation by the present defendants in the original proceeding; (3) its bone fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage." *Jones v. Soileau*, 448 So. 2d 1268, 1271 (La. 1984).

#### b. Abuse of process

To prove abuse of process, a plaintiff must establish the following elements: "(1) the existence of an ulterior purpose; and (2) a willful act in the use of the process not proper in the regular prosecution of the proceeding." *Phillips v. Whittington*, 497 F. Supp. 3d 122, 165 (W.D. La. 2020) (internal citation omitted). The first element is only satisfied if "the officer is acting for a specific purpose not authorized by law." *Id.* (internal citation omitted). The second element

requires "a failure to comply with the proper procedures or rules set out by law for conducting official actions." *Id.*

### c. Absolute Prosecutorial Immunity

Louisiana law tracks federal law on absolute prosecutorial immunity. *Singleton v. Cannizzaro*, 956 F.3d 773, 779 n.4 (5th Cir. 2020) (citing *Knapper v. Connick*, 681 So. 2d 944, 947, 950 (La. 1996)). Accordingly, the Louisiana Supreme Court has held that "a prosecutor acting within the scope of his prosecutorial duties as an advocate for the state is entitled to absolute immunity from suit for malicious prosecution as a consequence of conduct intimately associated with the judicial phase of the criminal process." *Knapper*, 681 So. 2d at 951. However, unlike in federal law, absolute immunity in Louisiana protects prosecutors from state-law claims in both individual and official capacity suits. *See Tickle v. Ballay*, 259 So. 3d 435, 441 (La. App. 4th Cir. 2018).

In the Complaint, plaintiff asserts the state-law claims of malicious prosecution (under Louisiana Civil Code article 2315) and abuse of process. *E.g.*, doc. 4, ¶¶ 243–49, 23. The District Attorney Defendants claim that absolute prosecutorial immunity bars these state-law claims against them. Doc. 24, att. 1, pp. 25–26. In support of his claims, plaintiff makes numerous conclusory statements and naked assertions, including the following: Plaintiff asserts that defendant Vines "solicited statements and affidavits from industry experts/veterans" and that the statements and affidavits were exculpatory. Doc. 4, ¶¶ 78–79. However, plaintiff did not specify which industry experts defendant Vines contacted or the contents of their affidavits. Plaintiff also asserts that "there could be no credible evidence against" him because he did not commit a crime or "cause issuance of the bonus or accept it" [*id.* at ¶ 134], despite previously acknowledging that he received a direct deposit bonus payment from the Casino. *Id.* at ¶ 40. He thus claims that the

District Attorney Defendants "had to fabricate a theory" to establish probable cause and prosecute the matter. *Id.* at ¶ 138. Plaintiff concludes that defendants Vines and Duhé violated his rights by fabricating witness testimony and using that testimony during trial. *Id.* at ¶ 245. Once again, plaintiff does not give supporting details such as what testimony was fabricated; his allegations of fabrication are bare bones. We need not assume legal conclusions, conclusory statements, or naked assertions devoid of further factual enhancement are true. *Harmon v. City of Arlington, Texas*, 16 F.4th 1159, 1162–63 (5th Cir. 2021) (quoting *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc)). We agree with the District Attorney Defendants that absolute prosecutorial immunity bars plaintiff's state-law claims against them. Thus, the motion to dismiss should be GRANTED as to plaintiff's state law claims against the District Attorney Defendants.

### III.
#### CONCLUSION

For the reasons stated, **IT IS RECOMMENDED** that the Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) [Doc. 24] be **GRANTED IN PART**. The Motion to Dismiss for Lack of Subject Matter Jurisdiction should be **DENIED**. The Motion to Dismiss for Failure to State a Claim should be **GRANTED**, and all claims against defendants Robert C. Vines and M. Bofill Duhé should be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that the identical Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) in the member case [6:22-cv-01398, doc. 22] be **GRANTED IN PART**. The Motion to Dismiss for Lack of Subject Matter Jurisdiction should be **DENIED**. The Motion to Dismiss for Failure to State a Claim should be **GRANTED**, and all claims against defendants Robert C. Vines and M. Bofill Duhé should be **DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. § 636 and Rule 72 of the Federal Rules of Civil Procedure, parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglas v. United Services Automobile Ass'n,* 79 F.3d 1415, 1429–30 (5th Cir. 1996).

THUS DONE AND SIGNED in Chambers this 10th day of March, 2023.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE