UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

O'NEIL J. DARDEN, JR.                    CASE NO.  6:22-CV-00404 LEAD

VERSUS                                   JUDGE ROBERT R. SUMMERHAYS

ROBERT C. VINES, ET AL.                  MAGISTRATE JUDGE DAVID J. AYO

<u>**RULING ON OBJECTIONS**</u>

The present matter before the Court is an Objection by Plaintiff O'Neil J. Darden to the

Magistrate Judge's Report & Recommendation ("R&R") addressing the Motion to Dismiss filed

by Defendants M. Bofill Duhé and Robert Vines. [ECF No. 49].[1] After considering the parties'

arguments, the record, and the relevant authorities, the Court rules as follows on Darden's

Objection.

# I.
## BACKGROUND

The Court adopts the Magistrate Judge's statement of the facts of this case:

> This civil rights action arises out of alleged malicious prosecution and abuse
> of process that resulted in plaintiff being criminally charged with and prosecuted
> for felony theft, computer fraud, and obstruction of justice. Doc. 4, ¶¶ 43–44.
> Plaintiff, a former employee of Cypress Bayou Casino, was elected Tribal Council
> Chairman of the Chitimacha Tribe of Louisiana in June 2015. *Id.* at ¶ 29. Defendant
> Duhé is the District Attorney for the 16th Judicial District, State of Louisiana. *Id.*
> at ¶ 16. Defendant Vines is the assistant District Attorney for the 16th Judicial
> District, State of Louisiana, and the Tribal Prosecutor for the Chitimacha Tribe of
> Louisiana. *Id.* at ¶ 9.

> The laws of the Chitimacha Tribe of Louisiana allegedly prohibit council
> members from working in the Casino or receiving any payments from the Casino.
> *Id.* at ¶ 36. After his election as Chairman, plaintiff allegedly received a bonus
> payment from the Casino for his former employment as a director, and the Tribal
> Council allegedly did not oppose the payment. *Id.* at ¶¶ 38–41. After the Tribal
> Gaming Commission received a complaint about "misappropriation of bonus
> monies," plaintiff and two others were criminally charged with felony theft,

---

[1] *See also* ECF Nos. 24, 43, 62

computer fraud, and obstruction of justice. *Id.* at ¶ 43. The Tribal Council Defendants pursued the charges with the Office of the District Attorney for the 16th Judicial District of Louisiana in St. Mary Parish. *Id.* at ¶ 44. Defendant Robert Vines prosecuted the matter in his capacity as assistant district attorney. *Id.* Plaintiff alleges that defendants used the prosecution to oust him as Chairman of the Tribal Council and to pursue their own personal gains. *Id.* at ¶¶ 49–50.

       This lawsuit was originally one of three filed by plaintiff, with suits filed in this court, state court (now removed to this court), and Chitimacha Tribal Court. Doc. 18, att. 4, p. 8. Defendants removed the state court action to this court, and the matter, also captioned *Darden v. Vines*, was assigned case number 6:22-cv-01398. As to the District Attorney Defendants, plaintiff makes claims of malicious prosecution, abuse of process, and a § 1983 conspiracy. Doc. 4, ¶ 2. The District Attorney Defendants then filed the instant motions to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Doc. 24. Specifically, they claim protection from suit under tribal sovereign immunity, Eleventh Amendment immunity, absolute prosecutorial immunity, and qualified immunity. *Id.* After the District Attorney Defendants filed motions to dismiss in both suits before this court, but before opposition was due, the two suits were consolidated. Doc. 30. The opposition filed in the lead case addresses the motions in both cases. Doc. 32, p. 8, n.1.[2]

The Magistrate Judge concluded that Darden's claims are not barred by tribal or Eleventh Amendment immunity, and therefore, to the extent Defendants seek dismissal pursuant to Rule 12(b)(1), the motion should be denied.[3] The Magistrate Judge further concluded that all claims should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim. Specifically, the Magistrate Judge concluded that Darden's federal claims asserted against Defendants in their individual capacities are barred by absolute immunity, that Darden's *Monell* and conspiracy claims fail to state a claim upon which relief may be granted, and that Darden's state law claims are barred by absolute immunity.[4]

---

[2] ECF No. 43 at 1–3.

[3] *Id.* at 4-5.

[4] *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

## II.

### DISCUSSION

**A.      Ruling on R&R.**

Darden first challenges the Magistrate Judge's conclusion that absolute prosecutorial immunity bars his personal capacity claims against Defendants Duhé and Vines. Darden argues that absolute immunity is inapplicable to Duhé and Vines because their activities "were investigative, thus precluding absolute prosecutorial immunity."[5] Darden argues that Duhé and Vines conducted a "police-like" investigation in which they coerced and intimidated witnesses into providing false testimony, and that "[n]one of these actions are intimately associated with the judicial phase of the criminal process nor any advocacy duties."[6] The Court disagrees.

The Magistrate Judge applied the correct legal standard for absolute immunity. Absolute immunity does not apply to every action of a prosecutor. The Fifth Circuit applies a "functional" test in determining whether a prosecutor's activities are covered by absolute immunity.[7] This functional test examines "the nature of the function performed, not the identity of the actor who performed it."[8] Absolute immunity applies to a prosecutor's actions that are "intimately associated with the judicial phase of the criminal process."[9] Absolute immunity thus covers a prosecutor's actions in initiating and pursuing a criminal prosecution, including presenting the government's case at trial.[10] Absolute immunity does not, however, apply to "administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a

---

[5] ECF No. 49 at 2.
[6] *Id.* at 8, 10.
[7] *Loupe v. O'Bannon*, 824 F.3d 534, 538–39 (5th Cir. 2016).
[8] *Id.* at 539 (quoting *Buckley v. Fitzsimmons,* 509 U.S. 259, 269 (1993)).
[9] *Imbler v. Pachtman,* 424 U.S. 409, 430 (1976).
[10] *Buckley,* 509 U.S. at 272–73.

prosecution or for judicial proceedings."[11] Absolute immunity also does not apply when a prosecutor "advis[es] the police in the investigative phase" of a criminal prosecution.[12]

Turning to Darden's original complaint, Darden alleges that Duhé and Vines coerced and intimidated certain defendants in this matter to provide false testimony and statements, but does not identify which defendants were involved or provide any specificity regarding the alleged false testimony or statements.[13] However, based on the timeline reflected in Darden's original complaint, the court agrees with the Magistrate Judge's conclusion that the activities of Duhé and Vines cited by Darden intimately relate to the judicial phase of the criminal proceedings against Darden. The original complaint alleges that the Louisiana State Police investigated the charges against Darden beginning in January 2016.[14] As part of that investigation, the Louisiana State Police interviewed witnesses, including several of the defendants named in this suit.[15] After completing its investigation, the Louisiana State Police concluded that there was probable cause to issue an arrest warrant for Darden.[16] The Chitimacha Tribal Council first referred the Darden's case to the United States Attorney's Office for the Western District of Louisiana.[17] When that office declined prosecution, the Tribal Council referred the case to the District Attorney's Office for the 16th Judicial District, and Duhé and Vines took over the prosecution of Darden's case.[18]

Darden's allegations of witness tampering and falsified testimony appear to arise out of the period *after* Duhé's office took over prosecution of the case following the State Police investigation. Accordingly, these actions appear to relate to Duhé's and Vines' efforts to initiate

---

[11] *Id.*

[12] *Loupe*, 824 F.3d at 538 (alterations in original) (quoting *Burns v. Reed,* 500 U.S. 478, 486 (1991)).

[13] *See e.g.* ECF No. 4 at ¶ 88.

[14] *Id*. at ¶ 60.

[15] *Id*. at ¶ 43.

[16] *Id*.

[17] *Id*. at ¶ 44.

[18] *Id*.

4

and prepare the case for a grand jury proceeding and, ultimately, a trial.[19] The interview and preparation of these witnesses would thus fall squarely within the protection of prosecutorial immunity. Darden attempts to avoid an absolute immunity defense by characterizing Vines' actions as an "independent investigation," and arguing that therefore these investigatory actions remove Vines and Duhé from the protection of absolute immunity. However, applying the Fifth Circuit's functional test, the actions cited by Darden—interviewing and preparing witnesses in preparation for a grand jury proceeding and trial—are intimately related to the process of initiating and pursuing a criminal prosecution. These actions are distinguishable from cases where a prosecutor is intimately involved in the initial police investigation, and the alleged constitutional violations flow from that investigatory activity.[20]

The present case is also distinguishable from the *Buckley* and *Weary* cases cited by Darden. In *Buckley*, a prosecutor solicited three separate studies by experts in order to establish a connection between a boot print left at the crime scene and a pair of boots that the defendant had turned over to the prosecutor.[21] The prosecutor conducted this investigation before authorities "had probable cause to arrest petitioner or to initiate judicial proceedings."[22] In contrast, here Darden's allegations are grounded on actions that occurred after the investigation by the Louisiana State Police, and after Darden was charged and the case was referred to Duhé's office for prosecution.

In *Weary*, the plaintiff alleged that a prosecutor participated in "at least six separate meetings" with the investigating detective assigned to the case "beginning six months before

---

[19] In his original complaint, Darden alleges witness interviews and meetings in or around August 2016. He then alleges that on "September 21, 2016, criminal defense counsel for Plaintiff was given notice by Robert C. Vines that Plaintiff was the 'target' of a Grand Jury hearing scheduled for October 5th and 6th." ECF No. 4 at ¶ 74. The district attorney's office ultimately decided to proceed with a bill of information. *Id.* at ¶ 77.

[20] *Loupe*, 824 F.3d at 538.

[21] 509 U.S. at 262-63.

[22] *Id.*

trial."[23] During these meetings, the prosecutor and the detective detained and interrogated a juvenile witness in order to fabricate testimony.[24] According to the Fifth Circuit panel, the prosecutor and the detective "intimidated the child, who was facing his own juvenile proceedings, into adopting a story they had invented that placed [the defendant] near the crime scene at the time of the murder."[25] In contrast, in the present case, Darden does not allege that Duhé or Vines interrogated witnesses in connection with the investigation by the Louisiana State Police. Rather, the allegations show that Vines met with witnesses after the Louisiana State Police investigation was concluded, and Vines interviewed those witnesses to prepare for a grand jury proceeding and trial.  In sum, the Magistrate Judge did not err in concluding that Darden's claims against Duhé and Vines in their individual capacity are barred by absolute immunity.[26]

Darden next challenges the Magistrate Judge's conclusion that Darden failed to state claims against Duhé and Vines in their official capacity under *Monell*. Darden contends that "Vines *personally* interviewed the named defendants on multiple occasions, coaching and coercing them into making statements that implicated Plaintiff's bonus payment (which he refused) was a criminal act—an 'intentional and deliberate decision to fabricate evidence.'" [27] Darden continues, "Vines then presented this perjured testimony in Plaintiff's trial." Darden then concludes that "[t]hese are direct acts and decisions of a final policymaker which were the moving force behind the violation of Plaintiff's rights of due process."[28] The flaw in Darden's argument is that while Duhé can be deemed a final policymaker with respect to the 16th Judicial District Attorney's

---

[23] 33 F.4th 260, 263 (5th Cir. 2022).
[24] *Id.*
[25] *Id.*
[26] The Court also agrees with the Magistrate Judge's determination that absolute immunity bars Darden's state law claims.
[27] ECF No. 49 at 12.
[28] *Id.* at 12-13.

Office, Vines, as an assistant district attorney, is not a final policymaker. In *Burge*, the Fifth Circuit held that a Louisiana district attorney is the "*independent and final* official policymaker for all of the administrative and prosecutorial functions" of the district attorney's office.[29] Accordingly, courts have held that Louisiana *assistant* district attorneys, such as Vines, do not have final policymaking authority.[30]

With respect to Duhé, Darden alleges, in conclusory fashion, that the policy he countenanced that resulted in a constitutional tort against Darden was "failing to adequately train [his] prosecutors not to suborn perjury or coerce testimony inconsistent with prior recorded police interviews. . . ."[31] However, the Supreme Court has recognized that "there are limited circumstances in which an allegation of a 'failure to train' can be the basis for liability under § 1983."[32] Allegations of failure to adequately train "may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference. . . ."[33] Here, Darden's "failure to train" allegation merely repeats the allegations of his personal capacity claim that Vines falsified witness testimony and provides no explanation of how a lack of training on the part of Duhé contributed to the constitutional violations alleged by Darden. Nor has Darden pleaded facts showing that Duhé acted with deliberate indifference.

In sum, the Court adopts the Magistrate Judge's recommendation that Darden's claims against Duhé and Vines in their individual capacities be dismissed based on absolute prosecutorial immunity.

---

[29] 187 F.3d 452, 469 (5th Cir. 1999) (emphasis added).
[30] *Livermore v. Arnold*, No. 10-507, 2011 WL 693569 (M.D. La. Jan. 20, 2011).
[31] ECF No. 4 at ¶ 242.
[32] *City of Canton, Ohio v. Harris*, 489 U.S. 378, 387 (1989).
[33] *Id.* at 388.

### B.    Leave to Amend.

Darden alternatively argues that he should be given leave to file an amended complaint to address the defects noted by the Magistrate Judge in the R&R.[34] Rule 15(a) of the Federal Rules of Civil Procedure provides that courts should "freely" grant leave to amend when "justice so requires."  But this "generous standard is tempered by the necessary power of a district court to manage a case."[35]  One key exception to this generous standard is where the amendment would be futile.[36] In determining futility, courts "apply the same standard of legal sufficiency as applies to Rule 12(b)(6)."[37] In other words, if an amendment would be subject to dismissal under a Rule 12(b)(6) motion, amendment would be futile, and the court should deny leave to amend.

The court concludes that Darden's request for leave to amend would be futile with regard to Duhé and Vines. Darden has filed a proposed amended complaint that he contends addresses the defects noted by the Magistrate Judge.[38] Darden had the benefit of the Magistrate Judge's analysis as well as the parties' briefing in connection with the Motion to Dismiss in formulating a proposed amended complaint. The proposed amended complaint adds additional factual details about Duhé and Vines' actions, but it does not overcome absolute immunity. For example, the proposed amended complaint identifies three witnesses—Defendants April Wyatt, Jacob Darden, and Toby Darden—that Vines allegedly interviewed and coached to provide false testimony.[39] Specifically, Darden alleges that the testimony of these witnesses after meeting with Vines differed from the testimony they provided to the Louisiana State Police during its investigation. According to Darden, the difference in testimony reflects Vines' efforts to create "a completely fabricated

---

[34] ECF No. 49 at 16-17.
[35] *Priester v. J. P. Morgan Chase Bank, N.A.*, 708 F.3d 667, 678 (5th Cir. 2013).
[36] *See Stripling v. Jordan Production Co., LLC*, 234 F.3d 863, 872-73 (5th Cir. 2000).
[37] *Id*.
[38] *See* ECF No. 50-3.
[39] *Id.* at ¶¶ 156-162.

story to adopt and repeat. . . ."[40] These new allegations contain more detail—the identities of witnesses and some explanation of the testimony—but still reflect witness interviews and witness preparation *after* the completion of the Louisiana State Police investigation, and *after* the case had been turned over to Duhé's office for prosecution. These new allegations are entirely consistent with Vines' initial preparation for a grand jury proceeding and, ultimately, for trial. Even accepting the allegations of fabricated testimony as true, absolute immunity bars Darden's claims because Vines' actions were "intimately associated with the judicial phase of the criminal process."[41] Darden also alleges *Brady* violations based upon his allegations that Duhé and Vines failed to turn over exculpatory evidence. Even if true, allegations of *Brady* violations do not overcome absolute immunity.[42] In sum, Darden's proposed amended complaint does not allege a municipal custom, practice, or policy on the part of a final policymaker which would support *Monell* liability. Accordingly, the Court denies Darden's request for leave to amend.

THUS DONE in Chambers on this 21st day of September, 2023.

_____
ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE

---

[40] *Id.* at ¶ 159.
[41] *Imbler v. Pachtman,* 424 U.S. 409, 430 (1976);
[42] *Burge*, 187 F.3d at 472.

9